UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GYPSY B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C19-935-MLP <br><br> ORDER |

## I. INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by rejecting her testimony and her treating medical sources' opinions. (Dkt. #10 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for an award of benefits under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff was born in 1961, has at least a high school education, and has worked as a credit clerk, cashier checker, sales clerk, truck driver, flagger, and security supervisor. AR at 43-44, 30, 74-75. Plaintiff was last gainfully employed in August 2015. *Id.* at 45.

ORDER - 1

On November 10, 2015, Plaintiff applied for benefits, alleging disability as of August 6, 2015. AR at 91. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 89, 90, 139, 140, 168-69. After the ALJ conducted a hearing on October 12, 2017, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 39-88, 15-31.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the August 6, 2015, alleged onset date.

Step two: Plaintiff has the following severe impairments: fibromyalgia, headaches, degenerative changes of the cervical and lumbar spine, mild osteoarthritis of the hands, sleep apnea, and chronic obstructive pulmonary disease.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can lift/carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk 6 hours per day, and sit 6 hours per day. She must alternate sitting and standing briefly every hour. She can frequently handle, finger, and reach. She can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold or heat, vibration, pulmonary irritants, and hazards.

Step four: Plaintiff can perform past relevant work as a credit clerk, and thus is not disabled.

Step five: The ALJ did not reach step five.

AR at 17-31.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. DISCUSSION

There is no dispute that Plaintiff suffers from fibromyalgia. As the Ninth Circuit has recognized, fibromyalgia is "unusual," and difficult to analyze in Social Security disability cases, because objective clinical findings are typically normal and the "condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.'" *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).

Typical symptoms include chronic pain throughout the body. *Id*. There is also no dispute that Plaintiff suffers from hand osteoarthritis. The ALJ restricted Plaintiff to handling and fingering "frequently," *i.e.*, up to two-thirds of the day. AR at 21.

Plaintiff challenges the ALJ's rejection of her testimony and two medical opinions regarding her ability to use her hands. If Plaintiff were limited to less than frequent handling and fingering, vocational expert testimony established that Plaintiff would be unable to perform past relevant work as a credit clerk. AR at 79. The vocational expert further testified that no other jobs that existed in significant numbers in the national economy would be available. *Id*. at 80; *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 201.14 (Medical-Vocational Guidelines would mandate a finding of disability).

### A. The ALJ Erred in Evaluating the Medical Opinion Evidence

#### *1. Standards for Reviewing Medical Opinions*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If an ALJ rejects the opinion of a treating physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.

1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

As an initial matter, Plaintiff argues that her treating providers' opinions of significant reaching and handling limitations were uncontradicted because the ALJ rejected the conflicting opinion of Guillermo Rubio, M.D., that Plaintiff had no reaching or handling limitations. *See* AR 28, 138. Plaintiff's analysis is flawed. The existence of conflicting opinions lowers the standard for the reasons the ALJ must provide to discount one—or both—of the opinions from "clear and convincing" to "specific and legitimate." *Revels*, 874 F.3d at 654. The ALJ discounted Dr. Rubio's opinion as insufficiently restrictive and discounted the treating providers' opinions as overly restrictive. Under Plaintiff's approach, two opinions that conflict would both be considered "uncontradicted" because they were both rejected. Such an outcome is nonsensical.

Plaintiff also argues that the ALJ improperly relied on her own lay opinion, because she rejected both Dr. Rubio's opinion and the treating providers' opinions and imposed intermediate restrictions, limiting Plaintiff to only "frequent handling, fingering, and reaching." AR at 28. But the fact that no medical opinion precisely matched the restriction in the RFC does not indicate that the ALJ relied on her own lay opinion. An ALJ must consider all medical evidence in the record, not just medical sources' opinions. *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("RFC assessment must be based on all of the relevant evidence in the case record, such as: [m]edical history, [m]edical signs and laboratory findings, . . . [r]eports of daily activities, [l]ay evidence, [r]ecorded observations, [and] [m]edical source statements"). The ALJ was permitted to rely on the medical evidence in the record, and translate that medical evidence into concrete restrictions in the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir.

2008) (ALJ is permitted to translate medical evidence into an RFC formulation "where the assessment is consistent with restrictions identified in the medical testimony.").

    2.  *Michael A. Fleming, PA-C*

Mr. Fleming opined that Plaintiff's hand dexterity was markedly impaired. AR at 751. He estimated the limitations would last more than twelve months. AR at 752. The ALJ gave Mr. Fleming's opinion little weight because it was inconsistent with Plaintiff's work history and the medical evidence, and relied heavily on Plaintiff's unreliable reports of pain. AR at 28-29.

The ALJ also noted that Mr. Fleming is a non-acceptable medical source, but this is not by itself a reason to discount his opinion. AR at 28. An ALJ must consider all medical opinions. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f). An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014).

    a.  <u>Work History</u>

The ALJ found that Mr. Fleming's opinion was inconsistent with Plaintiff's ability to work for many years after her fibromyalgia was diagnosed in 1998. AR at 28. In the absence of any medically significant change, the ability to work with the same impairments that are at issue in a disability determination can undermine a claimant's claims of disability. Here, however, the record shows that Plaintiff's symptoms worsened over time. In a July 2016 office visit, Plaintiff told her provider that she believed a 2013 work injury "kicked her fibro back into gear again," when she had been "doing good for 10 years." AR at 715. Plaintiff's attorney brought the issue of worsening symptoms to the ALJ's attention at the October 2017 hearing. AR at 42. The ALJ found that clinical findings of normal gait, "good" range of motion, full motor strength, normal reflexes, intact sensation, and no edema showed that Plaintiff's fibromyalgia had not deteriorated

since she last worked. AR at 28. However, as the Ninth Circuit has noted, people suffering from fibromyalgia have normal muscle strength, sensory functions, reflexes, and joints, with no swelling. *Revels*, 874 F.3d at 656. Indeed, there is an "absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id.* (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001)). There are "no laboratory tests to confirm the diagnosis" of fibromyalgia. *Id.* (quoting *Benecke*, 379 F.3d at 590). The clinical findings cited by the ALJ do not undermine evidence that Plaintiff's symptoms from fibromyalgia worsened.

Plaintiff's work history was not a germane reason to discount Mr. Fleming's opinion.

### b. Medical Evidence

An ALJ may reject a medical source opinion based on conflict with the medical evidence. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (affirming rejection of doctor's opinion that was contradicted by her own and other medical examiners' reports). An ALJ may also reject the opinion of a treating physician who prescribed only conservative treatment yet opines that a claimant suffers disabling conditions. *See Rollins*, 261 F.3d at 856 (affirming ALJ's rejection of doctor's opinion of total disability where doctor "prescribed a conservative course of treatment").

The ALJ acknowledged "degenerative changes in the spine" but found that Plaintiff had "only benign" neck and low back examination findings, and had only received conservative care for her spine. AR at 28. But the clinical findings the ALJ cited are not helpful in assessing fibromyalgia. The ALJ does not identify any more aggressive care that Plaintiff could have received for fibromyalgia. She tried various medications that she reacted badly to or that did not help. AR at 508 (side effects with fibromyalgia drugs), 510-11 (tramadol and flexeril caused pain and headache), 709 ("poor tolerance" of pain medications). She was unable to afford to continue

treatments that did help. *Id.* at 710 (could not afford to continue acupuncture or naturopathy). Benign spine findings and conservative care were not germane reasons to discount Mr. Fleming's opinion.

Regarding hand problems, the ALJ found that Plaintiff's "sporadic" complaints, limited to January 2016 and September 2016, contradicted Mr. Fleming's opinion. AR at 28 (citing AR at 726, 829).[3] Plaintiff has reported pain throughout her body since her alleged onset date. *See id.* at 822-23. As the ALJ noted, in January 2016, Plaintiff sought care for pain in her right hand over the previous four to five days. *Id.* at 829. Ibuprofen improved the hand symptoms. *Id.* While Plaintiff did not complain of hand pain specifically over the next several months, she continued to report more generalized pain. In February 2016, treatment notes documented "pain at multiple points of the body consistent with fibromyalgia." *Id.* at 833. In March 2016, Plaintiff reported "generalize[d] pain" but "[n]o active arthritis." *Id.* at 842. In June 2016, Plaintiff sought care for "all over body pain." *Id.* at 709. In July 2016, Plaintiff was seen in an emergency room for pain "everywhere." *Id.* at 720. As the ALJ noted, in September 2016, Plaintiff again sought treatment specifically for her hands. Treatment notes documented bilateral hand pain that had "worsened" two to three weeks earlier. *Id.* at 726. In other words, Plaintiff's hands were not pain-free even before she sought treatment specifically for her hands. In May 2017, Plaintiff's mental healthcare provider noted "chronic pain symptoms worsening in her hands." *Id.* at 993. On this record, the

---

[3] Preliminarily, Plaintiff's argument that this could only be a reason to discount a claimant's testimony, not a medical source's opinion, fails. Evidence that hand problems were rarely addressed in the treatment record could contradict opinions that her hand problems cause marked, ongoing limitations. Conflict with the medical evidence is a sufficient reason to discount a medical source's opinion. *Morgan*, 169 F.3d at 601-02; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions).

ALJ's finding that a lack of complaints undermined Dr. Fleming's opinion on Plaintiff's hand impairments was not supported by substantial evidence.

The ALJ also cited "mild" hand X-ray findings. AR at 28. On Mr. Fleming's referral, radiologist Kenneth D. Carpenter, M.D., took hand and wrist X-rays in September 2016 and assessed "[b]ilateral hand and wrist osteoarthritis" based on findings of "[m]ild" osteophyte formation in several distinct regions of the hands. *Id.* at 745. The ALJ, as a lay person, may rely on Dr. Carpenter's assessment but should not attempt to interpret the raw medical findings. "[A]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'" *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)); *see also Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ, "who was not qualified as a medical expert, should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition."). Mr. Fleming, as a trained medical professional, applied his expertise to interpret Dr. Carpenter's X-ray results and other clinical findings, and translate them into hand dexterity limitations. Picking the word "mild" out from the raw medical findings does not undermine Mr. Fleming's opinion.

Conflict with medical evidence on hand impairments was not a germane reason to discount Mr. Fleming's opinion.

c. <u>Reliance on Plaintiff's Self-Reports</u>

The ALJ discounted Mr. Fleming's opinion because she found that it "rel[ied] heavily on the claimant's subjective pain complaints and limitations," which the ALJ found non-reliable. AR at 29. An ALJ cannot reject a treating doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports the

ultimate opinion with her own observations. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008). Mr. Fleming did not find Plaintiff's pain complaints unreliable, and his opinion was supported by observations of diminished range of motion, hand tenderness, and decreased grip strength. AR at 753-54, 728. The ALJ cited treatment notes that Plaintiff was in "no acute distress" during appointments. AR at 29. "Acute" means "of recent or sudden onset; contrasted with chronic." Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute. Reliance on Plaintiff's self-reports was not a germane reason to discount Mr. Fleming's opinion.

The ALJ erred by discounting Mr. Fleming's opinion without a germane reason.

### 3. Adelaide H. Chute, ARNP, and Barbara Clure, M.D.

Plaintiff contends that the ALJ erred by rejecting the December 2015 medical opinion of Ms. Chute and Dr. Clure. On December 15, 2015, Plaintiff's treating provider, Ms. Chute, examined Plaintiff and filled out a Physical Functional Evaluation. AR at 462-64. She opined that Plaintiff's chronic pain from a 2013 work injury and fibromyalgia caused marked to severe interference with all exertional and postural activities, including handling and reaching. *Id.* at 463. She opined that Plaintiff was unable to perform even sedentary work. *Id.* at 464. Ms. Chute signed the opinions on December 15 as the examining professional, and treating physician Dr. Clure, signed them on December 16 as the reviewing and adopting professional. *Id.*

The ALJ gave little weight to the December 2015 opinion for the same reasons discussed above. Because those reasons were not germane, they did not meet the higher "specific and legitimate" standard.[4] The ALJ also discounted Ms. Chute's and Dr. Clure's opinion because it

---

[4] The ALJ also gave little weight to the December 2015 opinion because Ms. Chute was not an acceptable medical source, a reason the Commissioner concedes was erroneous because Dr. Clure was an acceptable medical source. AR at 28.

was inconsistent with Ms. Chute's own examination findings. AR at 29. In addition, the ALJ noted that the "opinion is a temporary opinion, intended to apply for only 6 months." AR at 29.

### a. Durational Requirement

Social Security disability can only be based on inability to work due to impairments that have "lasted or can be expected to last for a continuous period of not less than 12 months" or result in death. 20 C.F.R. §§ 404.1505(a), 416.905(a). Asked to "estimate [how long] the current limitation on work activities will persist with available medical treatment," Ms. Chute and Dr. Clure opined "6 months." AR at 464. The form did not solicit, and Ms. Chute and Dr. Clure did not offer, an estimate of how long the limitation had already persisted. Thus, the limitations opined by Ms. Chute and Dr. Clure did not meet the durational requirement for Social Security disability. This was a specific and legitimate reason to reject those limitations. Plaintiff argues that there is no requirement that an opinion state a 12-month duration. That is true; the ALJ could have chosen to accept Ms. Chute's and Dr. Clure's opinion. However, the ALJ decided not to, and the fact that the opinion estimated only six months of limitation was a specific and legitimate basis for the ALJ's decision. Plaintiff also argues that the "objective findings" of reduced neck and thumb range of motion persisted into 2017 when another treating provider, Michael A. Fleming, PA-C, opined handling limitations. (Dkt. 10 at 11 (citing AR at 751).) However, it is beyond the lay expertise of Plaintiff's counsel to determine that the two opinions are essentially interchangeable except for the date. Mr. Fleming attributed handling limitations to hand osteoarthritis, while Ms. Chute and Dr. Clure attributed them to chronic pain and fibromyalgia. AR at 751, 463. Their clinical range of motion findings also differed. *Id.* at 753-54, 465-66. The ALJ was not required to treat the opinions as one seamless opinion.

The ALJ did not err by discounting Ms. Chute's and Dr. Clure's opinion as reflecting short-term or temporary limitations.

b. Ms. Chute's Clinical Findings

Incongruity between a treating physician's opinions and her own medical records is a "specific and legitimate reason for rejecting" the opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ discounted Ms. Chute's and Dr. Clure's opinion because Ms. Chute's examination showed "full range of motion" throughout the spine and extremities and no edema. AR at 29. The ALJ's finding was not supported by substantial evidence, because Ms. Chute found reduced range of motion in neck extension and flexion; bilateral hip abduction, adduction, and backward extension; and right thumb IP joint flexion. *Id.* at 466. Moreover, the ALJ provided no explanation for how these findings would contradict Ms. Chute's and Dr. Clure's opinion. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. The ALJ has not explained why the medical sources' interpretation of their own results is incorrect.

Inconsistency between Ms. Chute's findings and her and Dr. Clure's opinion was not a specific and legitimate reason to discount the opinion.

c. Harmless Error Analysis

Although the ALJ provided erroneous reasons for rejecting Ms. Chute's and Dr. Clure's opinion, the error was harmless because she provided the specific and legitimate reason that the opinion only addressed a six-month period. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (applying harmless error analysis to review of a treating physician's opinion); *Molina*, 674 F.3d at 1117 (error harmless if "inconsequential to the ultimate disability determination").

The Court concludes the ALJ did not err by discounting Ms. Chute's and Dr. Clure's December 2015 opinion.

**B. The ALJ Erred by Discounting Plaintiff's Testimony on Hand Impairments**

*1.   Legal Standard for Evaluating the Plaintiff's Testimony*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from

physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

        2.       *The ALJ Erred by Discounting Plaintiff's Testimony on Hand Impairments*

Plaintiff challenges only the ALJ's rejection of her testimony on hand impairments. In a December 2015 Function Report, Plaintiff stated that her hands hurt and the pain worsens when she picks up items, writes, or types. AR at 290. She drops things frequently because her hands "give out." *Id.* at 295. Plaintiff testified at the October 2017 hearing that she needs to use both hands to drink from a glass. *Id.* at 60. Her fingers and wrists often lack dexterity. *Id*. It is difficult to do dishes or prepare food. *Id*. Plaintiff testified that she would not be able to do her former work as a credit clerk because she could not use her hands as required to count money and use a keyboard for most of the day. AR at 60-62.

The ALJ discounted Plaintiff's hand symptom testimony because the treatment record revealed only sporadic complaints and because objective findings "fail to corroborate" Plaintiff's testimony. AR at 25-26. As discussed above, the ALJ's finding of only sporadic complaints was not supported by substantial evidence. And "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence…." *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ also noted "discrepancies" that she said detracted from Plaintiff's reliability in general. *Id.* at 27. Even if any of these purported discrepancies were supported by substantial evidence, none related to Plaintiff's hand impairments. An ALJ must evaluate each symptom. *See* Social Security Ruling 16-3p, 2017 WL 5180304 at *8 (S.S.A. 2017) ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence").

The Court concludes the ALJ erred by discounting Plaintiff's testimony on hand impairments.

C.     **Scope of Remand**

Plaintiff requests the Court remand for an award of benefits or, in the alternative, for further administrative proceedings. (Dkt. # 10 at 1-2.) Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credits [the improperly discredited evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

Here, the three-step framework favors remanding for benefits. First, the ALJ failed to provide legally sufficient reasons to discount Mr. Fleming's medical opinion and Plaintiff's testimony on hand impairments. Second, there are no outstanding issues to be resolved. The ALJ

rejected Dr. Rubio's opinion, the only medical opinion that conflicted with Mr. Fleming's. Third, if Mr. Fleming's opinion and Plaintiff's testimony were credited, the ALJ would be required to find Plaintiff disabled on remand. The vocational expert testified that frequent handling was required to work as a credit clerk. Mr. Fleming's opinion of "[m]arked," *i.e.*, "[v]ery significant," interference with hand dexterity, was incompatible with handling up to two-thirds of the day. The vocational expert further testified that no other jobs that existed in significant numbers in the national economy would be available to Plaintiff with these limitations. Plaintiff testified directly that she could not sustain the handling required for her past work as a credit clerk. The only remaining issue is whether the Court should exercise its discretion to remand for further proceedings. The Court should remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021. The record here does not create any such doubt. Accordingly, the Court remands for an award of benefits.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for an award of benefits under sentence four of 42 U.S.C. § 405(g).

Dated this 6th day of December, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge